```
             DISTRICT COURT OF THE VIRGIN ISLANDS
               DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA        )
(NATIONAL PARK SERVICE),        )
                                )
            Plaintiffs,         )
                                )   Civil No. 2014-95
        v.                      )
                                )
DONNA ROBERTS; DEBRA ROBERTS-   )
LIBURD; LUCIA ROBERTS FRANCIS;  )
GLORIA JOSEPH; KEITH E. FRAZER; )
ALVENO A. HERMAN, SR.; ALLEN E. )
ROBERTS, II; EDWIN E. ROBERTS,  )
II; SHIREE ANN ROBERTS; RAY     )
ROBERTS; LYNETTE MAGRAS; GAYE R.)
MOSES; SEKOU MAGRAS; LENNY      )
LIBURD; LEE CHRISTIAN; DELSA    )
CHRISTIAN; and KATIKA KIMBO     )
DONOVAN,                        )
                                )
            Defendants.         )
                                )
```

**ATTORNEYS:**

**Ronald Sharpe, USA**
**Angela Tyson-Floyd, AUSA**
United States Attorney's Office
St. Thomas, VI
   *For the United States,*

**Joseph Caines, Esq.**
Law offices of Joseph Caines
St. Thomas, VI
   *For Donna Roberts; Lucia Roberts Francis; Gloria Joseph;*
   *Keith E. Frazer; Alveno A. Herman, Sr.; Allen E. Roberts,*
   *II; Edwin E. Roberts, II; Shiree Ann Roberts; Ray Roberts;*
   *Lynette Magras; Gaye R. Moses; Sekou Magras; Lenny Liburd;*
   *Lee Christian; Delsa Christian; and Katika Kimbo Donovan.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the motion of the United States to dismiss the counterclaims in this property dispute.

### I. FACTUAL AND PROCEDURAL HISTORY

On November 13, 2014, the United States brought a complaint against Donna Roberts; Lucia Roberts Francis; Gloria Joseph; Keith E. Frazer; Alveno A. Herman, Sr.; Allen E. Roberts, II; Edwin E. Roberts, II; Shiree Ann Roberts; Ray Roberts; Lynette Magras; Gaye R. Moses; Sekou Magras; Lenny Liburd; Lee Christian; Delsa Christian; and Katika Kimbo Donovan. The United States alleges that these defendants are encroaching on the United States' property, Parcel 5a Estate Bordeaux, which is located in St. John, United States Virgin Islands. Thereafter, on November 17, 2014, the complaint was amended to add an additional defendant, Debra Roberts-Liburd.

The amended complaint is a three-count complaint. Count One asserts a claim against all of the defendants to recover possession of Parcel 5a Estate Bordeaux pursuant to 28 V.I.C. § 281. Count Two asserts a claim against all of the defendants for common law trespass. Count Three asserts a claim against all of the defendants for public and private nuisance.

Subsequently, each of the defendants (collectively, the "Counterclaimants") filed an answer to the amended complaint and a counterclaim. The Counterclaimants filed an amended counterclaim on July 27, 2015. Count One of the counterclaim sought to quiet title. Count Two of the counterclaim sought to determine boundaries. Count Three of the counterclaim asserted an adverse possession claim.

The United States moved to dismiss the counterclaim. On March 17, 2016, the Court granted the United States' motion and dismissed the counterclaim. The Court held that the Counterclaimants had failed to plead their interest in the disputed property with the particularity required by the Quiet Title Act. The Court granted the Counterclaimants leave to amend their counterclaim until March 31, 2016.

On March 30, 2016, the Counterclaimants filed their amended counterclaim. Count One of the counterclaim seeks to quiet title. Count Two of the counterclaim seeks to determine boundaries. Count Three of the counterclaim asserts an adverse possession claim. The Counterclaimants also added a fourth claim, Count Four, which they label as a public nuisance claim.

On April 18, 2016, the United States moved to dismiss the amended counterclaim. The United States argues that Count One, Count Two, and Count Three must be dismissed for lack of subject

matter jurisdiction because (1) the claims are untimely under the Quiet Title Act's statute of limitations; and (2) the claims fail to state a claim under the Quiet Title Act's heightened pleading standard. The United States argues that Count Four must be dismissed because (1) the claim fails to state a claim for public nuisance; and (2) the Counterclaimants failed to allege that they complied with the Federal Tort Claims Act.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") governs motion to dismiss for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion may be treated as either a facial or a factual challenge to a court's subject-matter jurisdiction. *See Gould Elecs. V. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint are taken as true. Id. at 189-92; *see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the

*United States v. Roberts, et. al.*
Civil No. 2014-95
Memorandum Opinion
Page 5

jurisdiction of the district court"). When a party has yet to answer the Complaint or engage in discovery, the motion to dismiss is a facial attack on the Court's subject matter jurisdiction. *See Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial").

"[A] factual challenge[] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (original alterations omitted) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)); *see also Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990) (holding that factual basis for jurisdictional allegations in complaint could be disputed before answer was served). Where a motion to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to

jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

### B. Motion to Dismiss for Failure to State a Claim

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker,* 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.,* 127 S.Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.,* 127 S.Ct. at 1965).

### III. ANALYSIS

**A. Counts One, Two, and Three: The Quiet Title Act**

Unless sovereign immunity has been waived, the Court lacks subject-matter jurisdiction over claims against the United States. *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 246 (3d Cir. 2005). For certain actions involving real property, the United States waived sovereign immunity by enacting the Quiet Title Act. *See generally* 28 U.S.C. 2409A. "A waiver of sovereign immunity by the United States may be made subject to any (constitutional) conditions Congress wishes to impose, and those conditions are to be strictly construed." *Deakyne v. Dep't of Army Corps of Engineers*, 701 F.2d 271, 274 n.4 (3d Cir. 1983).

The Quiet Title Act--28 U.S.C. § 2409a ("Section 2409a")--provides that "[t]he United States may be named as a party defendant in a civil action under [Section 2409a] to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). District courts "have exclusive original jurisdiction of civil actions under [Section 2409a] to quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346. "Congress intended the [Quiet Title Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983); *see also Fadem v. United States*, 791 F.2d 1381, 1383 (9th Cir. 1986) ("[T]he Quiet Title Act and the Supreme Court's decision in *Block* apply to all boundary disputes with the government.").

The United States argues that the Counterclaimants' claims under the Quiet Title Act must be dismissed because the claim is not pled with sufficient particularity, as required by the Quiet Title Act.

To bring a claim against the United States under the Quiet Title Act, the pleading must "set forth with particularity the nature of the right, title, or interest which the plaintiff

claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d). This requirement serves to "modif[y] the customary pleading requirements for an initial complaint set forth in Fed. R. Civ. P. 8(a)." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1184 (10th Cir. 2007).

In *McMaster v. United States*, 731 F.3d 881 (9th Cir. 2013), the Ninth Circuit considered whether a QTA claim, which has some similarity to the claims alleged here, was pled with sufficient particularity. In that case, Ken McMaster, Maureen E. Galitz, and Steven E. Fawl (collectively, "McMaster") purchased title to a mining claim from Edwin Lynch, the mining claim's originator("Lynch"). *Id.* at 893-94. McMaster asserted, in relevant part, that he, not the United States, had title to improvements and structures located on the mining claim. *Id.* at 897. The United States filed a motion to dismiss the QTA claim for failure to state a claim. *Id.* at 884-85. The district court granted the motion and dismissed the QTA claim on the basis that McMaster failed to sufficiently allege how he had obtained ownership of the structures. *Id.*

On appeal, the Ninth Circuit affirmed the district court. *See id.* at 898. It reasoned that:

> With regard to the origins of the title to the improvements, McMaster only generally alleges that the structures were constructed incident to mining operations, and specifically alleges that the cabin was built sometime in the early 1890s. Nowhere does McMaster allege whether or how Lynch obtained title, or whether he retained title until he sold the Oro Grande mining claim to McMaster. These particular facts are important because title to the structures may have passed to the Government at some time. When a claim is abandoned or deemed invalid, the title to surface structures passes to the United States. *See Brothers v. United States,* 594 F.2d 740, 741 (9th Cir.1979). Thus, McMaster has failed to plead with particularly sufficient facts showing all of the circumstances under which his title to the structures was acquired, 28 U.S.C. § 2409a(d), and has failed to satisfy his burden under the QTA. *See* 28 U.S.C. § 2409a(d).

*Id.;* see also Hazel Green Ranch, LLC v. U.S. Dep't of the Interior, 490 Fed. App'x 880, 882 (9th Cir. 2012) (holding that Quiet Title Act pleading standard was not satisfied because plaintiff "fail[ed] to specify whether the implied easement was obtained by prior use or prescriptive use").

*McMaster v. United States* is instructive here. To plead their claims with sufficient particularity, the Counterclaimants must assert how they received their interests in the property in dispute. *Id.*

The Counterclaimants allege that the "Nerkitt family obtained No. 5A Estate Bordeaux . . . on or about 1802." ECF No. 80 at ¶ 6. "Charlotte Benjamin married John William Nerkitt," and their "union . . . produced six children." *Id.* at ¶¶ 8-9.

"After the death of [John William Nerkitt and his Charlotte Benjamin], No. 5A Estate Bordeaux . . . went to their children." *Id.* at ¶ 10. The Counterclaimants do not describe how John William Nerkitt came to own No. 5a Estate Bordeaux. Even if the Counterclaimants could overcome the hurdle of their failure to allege how John William Nerkitt obtained No. 5A Estate Bordeaux, their pleading would still be problematic.

Indeed, the Counterclaimants also do not specify whether John William Nerkitt's children obtained the property through intestate succession or the operation of a will. Finally, the Counterclaimants do not allege when John William Nerkitt died.

The Counterclaimants further allege that two of John William Nerkitt's children died without having children or spouses. Felecia Nerkit, the last surviving child of John William Nerkitt, had one child, Edwin E. Roberts I. "Upon [Felecia Nerkitt's] death[,] the property owned by Felecia Nerkitt went to Edwin E. Roberts I." *Id.* at ¶ 17. The Counterclaimants do not allege when Felecia Nerkitt died.

"Edwin E. Roberts I married Casilda E. Quetel." *Id.* at ¶ 18. The Counterclaimants allege they are the children of Edwin E. Roberts I and Casilda E. Quetel, both of whom have died. "After Mr. Roberts death, No. 5A Estate Bordeaux . . . went to his wife . . . and her children," and "[w]hen Casilda Roberts

died, property that she owned went to her children." *Id.* at ¶¶ 23-24. The Counterclaimants do not specify whether their parents died testate or intestate. The Counterclaimants also do not allege when their parents died, and thus when the Counterclaimants acquired their interest.

In their opposition to the United States motion to dismiss, the Counterclaimants argue they adequately pled that they obtained the property through intestate succession.

"Virgin Islands law provides that heirs-at-law succeed to real property of an intestate by operation of law, without the necessity of a formal administration of the estate." *Gov't of the Virgin Islands v. Certain Parcels of Land in Estate Nisky*, 713 F.2d 53, 57 (3d Cir. 1983). Intestate succession in the Virgin Islands is controlled by 15 V.I.C. § 84. A necessary prerequisite to the passing of property through intestate succession is that the decedent dies without a valid will. *See, e.g.*, 15 V.I.C. § 81(c) ("This chapter does not affect a limitation of an estate by deed or will."); § 84 (describing decent and distribution of "real property of a deceased person . . . , not devised").

Significantly, the Counterclaimants do not allege that any of their alleged predecessors in interest died without a will, i.e., intestate. Further, whether testate or intestate, the

Counterclaimants failed to allege when their predecessors died. Without such allegations, the Court cannot say when and how the Counterclaimants received their interests in the property involved in this dispute. Accordingly, the Counterclaimants claims under the Quiet Title Act must be dismissed for failure to state a claim.

### B. Count Four

The counterclaim alleges that several members of the Counterclaimants' family are buried on Estate Bordeaux No. 5a. Count Four of the counterclaim alleges that

> 124. Ancestors of counterclaim plaintiffs have an interest to a decent burial and undisturbed repose.
> 125. Counterclaim plaintiffs' ancestors rights of interment are a property interest and continues in perpetuity.
> 126. Counterclaim plaintiffs' ancestors have a right of sepulture.
> 127. Burial grounds are sacred.
> 128. Burial grounds are to be protected.
> 129. Human remains once interred shall not be disturbed
> 130. The next of kin has an interest in burial places.
> 131. The action of the counterclaim defendant is violating the sepulcher of the dead.

ECF No. 35 at ¶¶ 124-31. In connection with Count Four, the Counterclaimants ask the Court for (1) an "[o]rder forbidding the removal of any burial grounds"; and (2) an "[o]rder prohibiting the disturbance of any internment." *Id.* at 14.

As an initial matter, the legal basis for Count Four is unclear. The Counterclaimants label Count Four as "public nuisance." *Id.* "A public nuisance is an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1). To state a claim for public nuisance a plaintiff must allege "an interference with the rights of the community at large." *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985) (internal quotation marks omitted); *see also* Restatement (Second) Torts § 821B, cmt. g ("Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public."). An interest in the burial grounds of one's relatives, however, is not a right shared with "the community at large." *See Philadelphia Elec. Co.*, 762 F.2d at 315. As such, the Counterclaimants have failed to allege an action for public nuisance.

The Counterclaimants could also be alleging that they have a property interest in the graves themselves, namely an easement. *See, e.g.*, *Bennett v. 3 C Coal Co.*, 180 W. Va. 665, 669 (1989) ("The right one acquires in a cemetery lot is in the nature of a perpetual easement . . . ."). This claim, however,

would fall within the purview of the Quiet Title Act. *See, e.g.*, *McKay v. United States*, 516 F.3d 848, 850 (10th Cir. 2008) (explaining that "the [Quiet Title Act] applies even 'where the plaintiff claims an estate less than a fee simple such as an easement'" (original alterations omitted) (quoting *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978)). Accordingly, to the extent the Counterclaimants are asking the Court to declare they have a property interest in their ancestors' gravesites, Count Four must be dismissed for failure to state a claim along with Counts One through Three.

Finally, to the extent the Counterclaimants allege a cause of action for desecration or defacement of a grave or monument under the common law[1] or under the Religious Freedom Restoration Act,[2] their claim is also deficient.

---

[1] *See, e.g.*, *Dennis v. Keillor*, 306 N.W.2d 324, 325 (Mich. Ct. App.1981) ("An action . . . for defacement or removal of a tombstone or monument, which has been erected at a grave, may be maintained by . . . the heirs at law of the person to whose memory the gravestone or monument was erected . . . ." (internal quotation marks omitted)). It is unclear whether the Virgin Islands recognizes such a claim. Many states that do recognize such torts, however, include property rights as an element of the claim. *See Holder v. Elmwood Corp.*, 165 So. 235, 237 (Ala. 1936) ("Where one buries his dead, therefore, in soil to which he has the freehold right, or to the possession of which he is entitled, it would seem there is no difficulty in his protecting their graves from insult and injury, by an action of trespass against a wrongdoer."). It is debatable whether such claims would fall under the Quiet Title Act. *See Dunbar v. Lindsey*, 905 F.2d 754, 759 (4th Cir. 1990) (explaining that a "challenge to a non-ownership interest in real property is not precluded by the [Quiet Title Act]"). At any rate, the Court need not address these issues because, as discussed below, the Counterclaimants have not alleged standing to assert these claims.

[2] *See, e.g.*, *Thiry v. Carlson*, 78 F.3d 1491, 1493-96 (10th Cir. 1996).

In either case,

> a litigant [must] have standing to invoke the power of a federal court. The standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (internal quotation marks, alterations, and citations omitted). "[T]he jurisdictional issue of standing can be raised at any time, by either a party or by the court." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (internal quotation marks omitted).

To adequately plead standing, a plaintiff's complaint must establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal quotations, alterations, citations, and footnotes omitted).

"In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a [Federal] Rule [of Civil procedure] 12(b)(6) motion to dismiss for failure to state a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

The Counterclaimants allege that "[b]urial grounds are sacred" and that "[h]uman remains once interred shall not be disturbed." ECF No. 35 at ¶¶ 127, 129. As relief, the Counterclaimants ask for injunctions against the United States preventing the removal or disturbance of the burial grounds. Based on the allegations and the prayer for relief, the Court surmises that the harm the plaintiffs allege they have or will suffer is desecration of their ancestors' graves or disinterment of their ancestors' remains.

There are no allegations in the counterclaim suggesting that the United States has already disturbed the gravesites in any way. The Counterclaimants also fail to allege that the United States has indicated in any way that it will do so in the future. In short, the Counterclaimants allege nothing to suggest

*United States v. Roberts, et. al.*
Civil No. 2014-95
Memorandum Opinion
Page 18

that they have suffered any harm in the past or are likely to suffer any harm in the future. Accordingly, the Court holds that the Counterclaimants have failed to allege that they have standing to bring Count Four.

An appropriate order will follow.

                                                S\_____
                                                  **CURTIS V. GÓMEZ**
                                                    **District Judge**

Case: 3:14-cv-00095-CVG-RM   Document #: 144   Filed: 03/30/17   Page 18 of 18